UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
MAGALY BERNADOTTE,

                Plaintiff,                **MEMORANDUM & ORDER**
                                                                        13-CV-965 (MKB)
        v.

NEW YORK HOSPITAL MEDICAL CENTER
OF QUEENS,

                Defendant.
-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Magaly Bernadotte brought the above-captioned action against Defendant New York Hospital Medical Center of Queens, asserting claims of wrongful termination under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–101 *et seq*.  Plaintiff also asserted a retaliation claim under the ADA, the NYSHRL and the NYCHRL.  Plaintiff filed an Amended Complaint on June 12, 2013, which asserted all of the same claims except for retaliation claims pursuant to the NYSHRL and the NYCHRL.  Defendant moved to dismiss the Amended Complaint.  At oral argument on February 10, 2014, the Court granted Defendant's motion to dismiss Plaintiff's FMLA claim but denied all other aspects of Defendant's motion to dismiss.  The Court granted Plaintiff leave to amend the Complaint a second time to reassert her retaliation claims pursuant to the NYSHRL and NYCHRL which were apparently inadvertently left out of Plaintiff's Amended Complaint.  The Court explains below its dismissal of the FMLA claims and its denial

of the motion to dismiss as to the discrimination claims under the ADA, the NYSHRL and the NYCHRL and the retaliation claim under the ADA .

I. Background

    a. Plaintiff's Original Complaint

In Plaintiff's original Complaint, she adopted and alleged factual findings from a quasi-judicial hearing before the New York State Department of Labor ("DOL"), Unemployment Insurance Division. (Compl. ¶ 7.) The Complaint described certain facts that were testified to under oath. (*Id.*) According to the Complaint, Plaintiff worked as an emergency technician for Defendant for approximately five years until June 2011, when Plaintiff took an approved medical leave of absence. (*Id.* ¶ 7a.) Plaintiff suffered from health issues for which she was receiving medical treatment and which affected her ability to stand for extended periods of time. (*Id.* ¶ 7b.) Defendant was aware that Plaintiff had been enrolled in a nursing program for about three years. (*Id.* ¶ 7c.) Defendant subsequently learned that, in addition to classroom work, Plaintiff was involved in clinical sessions which involved following and observing the instructor while dealing with actual patients in a hospital setting. (*Id.* ¶¶ 7d–e.) While attending these clinical sessions, Plaintiff could frequently avoid continuous standing. (*Id.* ¶ 7f.) Defendant considered Plaintiff's actions to be fraudulent because, while on sick leave, Plaintiff was performing activities which were similar to her regular duties. (*Id.* ¶ 7g.) By letter dated July 25, 2011, Defendant discharged Plaintiff. (*Id.* ¶ 7h.) The administrative law judge in Plaintiff's DOL hearing found no probative evidence that Plaintiff knew or should have known that her activities violated any obligation to Defendant. (*Id.* ¶ 7l.)

### b. Amended Complaint

In Plaintiff's Amended Complaint, she did not adopt or reallege the factual findings from the quasi-judicial hearing. Plaintiff now alleges that she worked for Defendant for approximately five years and received full benefits, including sick time, vacation and overtime. (Am. Compl. ¶ 7.) On or about July 20, 2011, Plaintiff went on an approved medical leave because she was suffering from an illness for which she was receiving medical treatment. (*Id.* ¶ 9.) Specifically, Plaintiff was having difficulty standing for extended periods as a result of a flare-up of a diabetes symptom which caused severe pain in her legs. (*Id.*)

Plaintiff's supervisor, Suzanne Pugh, was dissatisfied with Plaintiff taking time off to recuperate from her disability. (*Id.* ¶ 10.) Pugh knew that Plaintiff was attending an evening nursing program. (*Id.* ¶ 11.) Pugh also knew that attendees of the nursing program participated primarily from the seated position. (*Id.* ¶ 12.) However, Pugh used this knowledge for a "nefarious reason." (*Id.*) Pugh called Plaintiff while she was on sick leave and accused her of lying to take time off to attend the nursing program. (*Id.*) Pugh demanded Plaintiff's resignation and warned Plaintiff that if she refused, Pugh would make sure that Plaintiff never graduated and that Plaintiff's reputation in the nursing community would be tarnished such that she would be unemployable. (*Id.* ¶ 13.) Plaintiff refused so Pugh told Plaintiff that she was terminated from her position, and followed up with correspondence stating the same. (*Id.* ¶ 14.)

## II. Discussion

### a. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must take all of the factual allegations in the complaint as true." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv.*

3

*Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)); *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678); *see also Pension Ben. Guar. Corp.*, 712 F.3d at 717–18. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). Although all allegations contained in the complaint are assumed to be true, this principle is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

    **b. FMLA Claim**

Plaintiff alleges that Defendants committed an unlawful employment practice in violation of the FMLA when it terminated Plaintiff while she was on medical leave. (Am. Compl. ¶ 18.) "The FMLA gives eligible employees an 'entitlement' to twelve weeks per year of unpaid leave '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)). It "'creates a private right of action to seek both equitable relief and money damages against any employer . . .' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." *Id.* (quoting *Nevada Dept. of Human*

4

*Resources v. Hibbs*, 538 U.S. 721, 724–25 (2003)). "The Second Circuit recognizes distinct claims of interference and retaliation under the FMLA." *Sista*, 445 F.3d at 175 (discussing this split approach to FMLA claims); *see also Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004) (same). Plaintiff fails to specify whether Defendant allegedly interfered with her FMLA rights or retaliated against her for exercising her FMLA rights. Regardless of Plaintiff's particular claim, she does not allege that she is an eligible employee under the FMLA, rendering any claim under the FMLA unviable.

"To be eligible for FMLA leave, an employee must work 'at least 1,250 hours of service . . . during the previous 12-month period.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (citing 29 U.S.C. § 2611(2)(A)(ii)); *see also Alexidor v. U.S. Office of Pers. Mgmt.*, No. 13-CV-4027, 2013 WL 4647528, at * 3 (E.D.N.Y. Aug. 29, 2013) ("To qualify as an 'eligible employee,' the employee must have been employed (1) 'for at least 12 months by the employer,' and (2) 'for at least 1,250 hours of service with such employer during the previous 12–month period.'" (quoting 29 U.S.C. § 2611)); *Garneau v. Empire Vision Ctr., Inc.*, No. 09-CV-1078, 2010 WL 2680243, at *8 (N.D.N.Y. July 1, 2010) ("among the prerequisites to stating a claim under the FMLA, it is necessary that a plaintiff meet the definition of an eligible employee. . . . [T]his term means an employee who has been employed . . . for at least 1,250 hours of service with such employer during the previous 12-month period." (citation and internal quotation marks omitted)). "[E]ligibility is a threshold issue which has to be proved by plaintiff in order for him to be entitled to relief." *Bulmer v. Yellow Freight Sys., Inc.*, 2000 WL 637066, at *3 (2d Cir. May 16, 2000); *see also Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011) ("Eligibility is a threshold issue, and it is insufficient for Plaintiff to 'merely assert[ ] in a conclusory manner that he is eligible without stating any facts

5

that relate to the definition of an eligible employee.'" (citing *Spurlock v. NYNEX*, 949 F. Supp. 1022, 1033 (W.D.N.Y. 1996))). "[S]imply alleging that the employee was employed full-time, is not enough to establish the 1,250 hour requirement under the FMLA." *Bakeer v. Nippon Cargo Airlines, Co., Ltd.*, No. 09-CV-3374, 2011 WL 3625103, at *40 (E.D.N.Y. July 25, 2011) (citation and internal quotation marks omitted), *report and recommendation adopted*, No. 09-CV-3374, 2011 WL 3625083 (E.D.N.Y. Aug. 12, 2011).

Plaintiff alleged in her Amended Complaint that she was employed by Defendant for about five years and that she was an employee within the meaning of the FMLA. (Am. Compl. ¶¶ 7, 17.) This allegation is insufficient. *See Bakeer*, 2011 WL 3625103, at *40 ("[T]o the extent that plaintiff has failed to assert that he worked the requisite number of hours to qualify for FMLA leave, he has failed to meet the pleading requirements for FMLA eligibility."); *Roff v. Low Surgical & Med. Supply, Inc.*, No. 03-CV-3655, 2004 WL 5544995, at *8 (E.D.N.Y. May 11, 2004) ("Although the factual allegations contained in plaintiff's complaint suggest that she was a full time employee of defendant since September 2000, they are insufficient to establish that she actually performed at least 1,250 hours of service during the twelve month period immediately preceding her requested leave, as required by [the] FMLA.") In her opposition papers, Plaintiff argues that an employer must observe any benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA and that "simple deductive reason" leads one to the conclusion that Plaintiff has alleged that she was qualified to take leave. (Pl. Opp'n 4–5.) At oral argument on February 10, 2014, Counsel likewise referenced the fact that Plaintiff was afforded greater rights under Defendant's internal policies than a part-time employee but conceded that Plaintiff was a part-time employee and did not satisfy the 1,250 hours required by the statute within the 12-month period immediately prior

6

to her sick leave. Because Plaintiff failed to plead facts sufficient to show eligibility under the FMLA and based on counsel's representation that Plaintiff cannot meet the number of hours required by the statute, the Court dismissed Plaintiff's claim.

### c. Disability Discrimination Pursuant to the ADA, the NYSHRL and the NYCHRL

Defendant moved to dismiss Plaintiff's Amended Complaint on the grounds that it directly contradicts her original Complaint and, thus, the Court need not accept the truth of the allegations as set forth in the Amended Complaint. Defendant further argues that the original Complaint failed to plead a plausible discrimination claim and Plaintiff's discrimination claims pursuant to the ADA, the NYSHRL and the NYCHRL should therefore be dismissed. Accepting the truth of the factual allegations in the Amended Complaint, the Court found that Plaintiff stated a plausible disability discrimination claim and denied Defendant's motion to dismiss as to these claims.

#### i. Amended Complaint Versus Original Complaint

Defendant argued that Plaintiff's Amended Complaint completely omits Plaintiff's prior admissions — including any reference to Defendant's discovery that Plaintiff was performing clinical rotations at another hospital during her paid sick leave — and replaced them with new and directly contradictory allegations. (Def. Mem. 9.) Defendant therefore urged the Court to reject the Amended Complaint's contradictory allegations. (*Id.*) The Court disagrees with Defendant and accepts the allegations of the Amended Complaint as true.

Defendant is correct that some courts in this Circuit have held that they "need not accept as true allegations that conflict with a plaintiff's prior allegations." *Dozier v. Deutsche Bank Trust Co. Americas*, No. 09-CV-9865, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011) (citing *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-400, 2008 WL 4386764, at *6 (S.D.N.Y.

7

Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint a court is authorized to accept the facts described in the original complaint as true." (alterations in original)), *aff'd*, 356 F. App'x 535 (2d. Cir. 2009)); *see also Wallace v. New York City Dep't of Corr.*, No. 95-CV-4044, 1996 WL 586797, at *1–2 (E.D.N.Y. Oct. 9, 1996) (declining to credit an amended complaint which alleged a "policy" where the plaintiff previously alleged the act in question was an "aberration"). However, many courts in this Circuit have held otherwise, and note that "[p]rior inconsistent pleadings, though admissible . . . are controvertible, not conclusive, admissions." *The Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 395 n.5 (S.D.N.Y.1988); *see also Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261, 2011 WL 1655575, at *6 (E.D.N.Y. May 2, 2011) (recognizing that "in a typical case, a prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true" yet finding the case before the court to be atypical in that the plaintiff's amended complaint contradicted its three prior complaints), *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (affirming but construing the district court's decision as "in essence . . . reject[ing] the amended complaint as exceeding the parameters of the leave that was given to file an amended complaint[]"); *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 266 (S.D.N.Y. 2008) ("The changes between the complaint and amended complaint are, when taken as a whole, not 'blatant' or 'directly contradict[ory],' and can be described as clarifying but, at most, as inconsistent." (alteration in original)); *Streit v. Bushnell*, 424 F. Supp. 2d 633, 640 n.4 (S.D.N.Y. 2006) ("It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the Court, only to have the case dismissed because the conforming change in some way may conflict with an allegation

8

in the earlier pleadings."); *Barris v. Hamilton*, No. 96-CV-9541, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999) ("While there may be a rare occasion to disregard the contradictory and manipulated allegations of an amended pleading . . . the more usual and benevolent option is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course." (citing *The Limited*, 683 F. Supp. at 395 n.5)).

   Here, the differences between the allegations of the Amended Complaint and the original Complaint are not as blatantly contradictory as Defendant argues.  For example, Plaintiff previously alleged that Defendant "*considered* claimant's actions to be fraudulent because the claimant [Bernadotte] was performing activities which were similar to her regular duties while she was on paid sick leave" and Defendant discharged Plaintiff, by letter, "because of this situation."  (Compl. ¶¶ 7g–h (emphasis added)).  The Amended Complaint alleges that Plaintiff's supervisor, Pugh, knew that the nursing program attendees participated "primarily from the seated position" but Pugh used her knowledge of Plaintiff's participation for a "nefarious" reason, demanding Plaintiff's resignation because Pugh was "dissatisfied" with Plaintiff taking time off to recuperate as an accommodation for her disability.  (Am. Compl. ¶¶ 10, 12.)  These sets of allegations, although certainly not consistent, are not directly contradictory.  The allegations in the original Complaint can be read as Defendant's pretextual reason for terminating Plaintiff's employment while the Amended Complaint attempts to assert the actual, discriminatory reason for such termination.

   Defendant also argues that in the Amended Complaint Plaintiff states that Pugh knew all along that attendees of the nursing program participated from the seated position, and that this directly contradicts the allegations in the original Complaint that Defendant knew of Plaintiff's nursing program yet subsequently learned that Plaintiff was performing clinical rotations that

9

involved activities similar to her job duties. However, although not mentioned by Defendant, Plaintiff also alleged in her original Complaint that "while attending these sessions, [Plaintiff] could frequently avoid continuous standing." (Compl. ¶ 7f.) A harmonious reading of the complaints suggests that Plaintiff is alleging that Pugh knew all along that Plaintiff could participate in the nursing program while being seated yet later discovered that the program also involved similar job duties. Taken as a whole, while not congruous, Plaintiff's allegations are not in such direct contradiction that the Court is moved to abandon the usual deference afforded to an Amended Complaint and therefore "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the [P]laintiff's favor." *Lundy*, 711 F.3d at 113.

### ii. Disability Discrimination Claims

Defendant argues that Plaintiff has failed to plausibly allege that she was terminated because of a disability. Claims for discrimination under the ADA are analyzed under the *McDonnell Douglas* burden shifting test. *See McDonnell Douglas Corp v. Green*, 411 U.S. 742, 802 (1973); *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999). This test also applies to Plaintiff's NYSHRL claim. *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 18 (2d Cir. 2013) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) ("The identical standards apply to employment discrimination claims brought under Title VII, Title IX, New York Executive Law § 296, and the Administrative Code of the City of New York.")).

To establish a prima facie case of discrimination, a plaintiff must allege that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an

10

adverse employment action because of his disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010) (citations omitted); *see also Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (outlining the elements of a prima facie case). The main question on a motion to dismiss is whether Plaintiff can establish a claim that has "[f]actual allegations [that] raise a right of relief above the speculative level." *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 55). Although "[t]he pleading standard for employment discrimination complaints is somewhat of an open question[,]" the Second Circuit has suggested that "at a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a prima facie case is not required." *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012). District courts in this Circuit have agreed that "[t]he elements of a *prima facie* case do . . . 'provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible.'" *Pahuja v. Am. Univ. of Antigua*, No. 11-CV-4607, 2012 WL 6592116, at *9 (S.D.N.Y. Dec. 18, 2012) (quoting *Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011)). "Courts therefore 'consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests.'" *Id.* (quoting *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10-CV-0251, 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011)); *see also Giraud v. Bd. of Educ., Newburgh Enlarged City Sch. Dist.*, No. 12-CV-1842, 2013 WL 3776242, at *5 (S.D.N.Y. July 17, 2013) (same); *O'Dette v. New York State Unified Court Sys.*, No. 12-CV-2680, 2013 WL 1623597, at *6 n.2 (E.D.N.Y. Apr. 15, 2013) (same).

### 1.  First, Second and Third Prongs of the Prima Facie Case

Plaintiff has sufficiently alleged the first three elements of her prima facie case. Defendant does not dispute that Plaintiff is covered by the ADA, satisfying the first prong of a prima facie case.  (Def. Mem. 13.)  Defendant also assumes for the purpose of this motion that Plaintiff suffers from a disability as defined by the ADA.  (*Id.*)  Disability under the ADA is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."  *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 165 (2d Cir. 2013) (quoting 42 U.S.C. § 12102(2)), *cert. dismissed*, --- U.S. ---, 133 S.Ct. 2823 (2013)).  "The term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities."  *Joseph v. HDMJ Rest., Inc.*, No. 09-CV-0240, 2013 WL 4811225, at *11 (E.D.N.Y. Sept. 9, 2013) (quoting *Fagan v. United Int'l Ins. Co.*, 128 F. Supp. 2d 182, 185 (S.D.N.Y. 2001)).

Plaintiff alleges that she could not stand for extended periods of time and that, for this reason, her doctor recommended that she take sick leave which Defendant approved.  At the motion to dismiss stage, these allegations are sufficient to allege a disability.  *See Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 12-CV-00788, 2013 WL 6230092, at *6 (D Conn. Dec. 2, 2013) (recognizing that the ADA Amendment Act of 2008 identified "standing" as a "major life activity"); *Jones v. Fischer*, No. 11-CV-774, 2013 WL 4039377, at *11 (N.D.N.Y. Aug. 7, 2013) (same); *but see Price v. City of New York*, No. 09-CV-4183, 2013 WL 1182073, at *7 (E.D.N.Y. Mar. 21, 2013) ("Courts in this Circuit repeatedly have held that the inability to, e.g., walk long distances or climb stairs does not in itself substantially limit an individual's ability to perform a

major life activity.").

With respect to Plaintiff's qualifications, Plaintiff does not explicitly allege that she was qualified to perform the essential functions of her job as an emergency technician with or without reasonable accommodation. However, Plaintiff only requested a few days of sick leave, (Am. Compl. ¶ 9), which suggests, drawing an inference in Plaintiff's favor, that she could perform her job after a few days of rest. Moreover, Defendant assumed that Plaintiff was qualified for her position for the purpose of this motion. (Def. Mem. 13.)

### 2. Fourth Prong of the Prima Facie Case

Plaintiff has plausibly alleged that she was terminated by reason of having a disability. Plaintiff alleged that Pugh was dissatisfied with Plaintiff taking leave as an accommodation for her disability and, while on leave, Pugh "nefarious[ly]" used Plaintiff's participation in the nursing program to demand Plaintiff's resignation. (Am. Compl. ¶¶ 10–12.) As stated, Plaintiff has alleged facts sufficient to draw an inference of discrimination. Namely, Plaintiff's supervisor harbored dissatisfaction at Plaintiff for taking medical leave and used Plaintiff's attendance at the nursing program as an excuse for executing Plaintiff's unlawful termination. Plaintiff need not plead that discriminatory intent was the sole factor in her termination, only that "discriminatory animus played a motivating role . . . ." *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25–26 (2d Cir. 2011); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000) (holding that the ADA covers "situations in which discrimination on the basis of disability is one factor, but not the only factor, motivating an adverse employment action decision"). Accordingly, Defendant's motion to dismiss was denied as to Plaintiff's ADA and NYSHRL unlawful termination claims.

In addition, because the Court determined that Plaintiff satisfied her pleading burden as to

her federal and state discrimination claims, Defendant's motion to dismiss Plaintiff's NYCHRL claim was also denied. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *5 (E.D.N.Y. Dec. 20, 2013) ("[D]ifferent standards govern NYCHRL, a 'one-way ratchet exists' where the ADA constitutes a 'floor below which the City's Human Rights Law cannot fall.'" (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009))); *L.C. v. LeFrak Org., Inc.*, No. 13-CV-2759, 2013 WL 6569868, at *9 (S.D.N.Y. Dec. 13, 2013) (Courts should "construe [the NYCHRL] broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."); *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 295 (S.D.N.Y. 2012) ("The NYCHRL must be construed independently from and more liberally than [its] federal and state counterparts." (alteration in original and internal quotation marks omitted)).

### d. Retaliation Claim

Although Defendant moved to dismiss the entire Amended Complaint, it did not offer any argument in its written submissions with respect to Plaintiff's ADA retaliation claim.[1] At oral argument Defendant argued that Plaintiff did not assert that she engaged in any protected activity. Drawing all inferences in Plaintiff's favor, she alleges that she was terminated in retaliation for taking approved medical leave as a result of her disability.[2] To establish a prima facie case of retaliation, Plaintiff must show: "(1) that she participated in a protected activity,

---

[1] Plaintiff did not allege retaliation claims pursuant to the NYSHRL or the NYCHRL in her Amended Complaint but based on Counsel's representation at oral argument that he removed those claims from the Amended Complaint in error, the Court granted Plaintiff leave to file a second amended complaint adding these claims.

[2] Plaintiff alleges that "Queens Hospital's conduct, as alleged herein, was retaliation because Bernadotte's employment was wrongfully terminated by Queens Hospital while she was engaged in protective activity under the ADA." (Am. Compl. ¶ 18.) Plaintiff does not explicitly state that her approved medical leave was a protected activity, but, drawing all inferences in her favor, said leave is the protected activity referenced.

(2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

Under the ADA, it is unlawful for an employer to 'discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." U.S.C. § 12203(a). Traditionally, complaints, whether formal or informal, are considered protected activity in retaliation claims. *See Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 650 (2d Cir. 2011) ("protected activities include 'the filing of formal charges . . . as well [as] informal protests of discriminatory employment practices'" (alterations in original) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 208–09 (2d Cir. 1990)). The Second Circuit and district courts in this Circuit have also allowed retaliation claims based on a request for reasonable accommodation. *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002) ("[P]laintiffs do allege that they were seeking reasonable accommodation of Rose's disability — which constitutes protected activity under Section 504/ADA."); *Willoughby v. Connecticut Container Corp.*, No. 11-CV-992, 2013 WL 6198210, at *15 (D. Conn. Nov. 27, 2013) ("[T]his district has more than once cited 'a request for reasonable accommodation' as one 'example of a protected activity' under the ADA." (citing *Bayonne v. Pitney*, No. 03-CV-712, 2004 WL 213168 at *2 (D. Conn. Jan. 27, 2004))); *Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) ("Requesting a reasonable accommodation of a disability is an ADA-protected activity." (citing *Weixel*, 287 F.3d at 149)); *Guinup v. Petr-All Petroleum Corp.*, 786 F. Supp. 2d 501, 513

(N.D.N.Y. 2011) ("Requesting reasonable accommodations for a disability may also constitute protected activity." (citing *Weixel*, 287 F.3d at 149)).

Plaintiff alleges that she had difficulty standing for extended periods of time due to pain in her legs, which is a symptom of her diabetes. (Am. Compl. ¶ 9.) On advice from her doctor, Plaintiff requested and received approved medical leave from Defendant. (*Id.*) At this stage of the litigation, drawing all inferences in favor of Plaintiff, the Court finds that Plaintiff has adequately pleaded a protected activity. Plaintiff also alleges that she was terminated while on approved medical leave, satisfying the final two prongs of a prima facie case. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (internal quotation omitted)). Defendant's motion to dismiss Plaintiff's retaliation claim was therefore denied.

**III.    Conclusion**

The Court granted Defendant's motion to dismiss Plaintiff's FMLA claim and denied Defendant's motion to dismiss Plaintiff's claims of unlawful termination under the ADA, the NYSHRL and the NYCHRL and retaliation under the ADA.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: February 27, 2014
      Brooklyn, New York